973 So.2d 1274 (2008)
James KRAVITZ, Individually, and as Administrator D.B.N.C.T.A. of the Estate of Max Kravitz, Appellant,
v.
Marcus LEVY and Frieda Passon, as Co-Personal Representatives of the Estate of Morris Passon, Appellees.
Nos. 4D06-915, 4D06-4034.
District Court of Appeal of Florida, Fourth District.
February 20, 2008.
Rehearing Denied February 20, 2008.
*1275 Peter J. Forman of Tescher Gutter Chaves Josepher Rubin Ruffin & Forman, P.A., Boca Raton, for appellant.
Victor Kline, Amanda Chapman and Richard H. Gaines of Greenspoon Marder, P.A., Fort Lauderdale and Orlando, for appellees.

ON MOTION FOR REHEARING
WARNER, J.
We deny appellees' motion for rehearing, withdraw our previously issued opinion, and substitute the following in its place.
A beneficiary of an estate appeals a final summary judgment in favor of the estate of the deceased personal representative of the estate, concluding that the beneficiary's cause of action against the personal representative for breach of fiduciary duty was barred by the statute of limitations. Because we conclude that there is an issue of material fact as to whether the actions of the personal representative constituted a continuing tort, we reverse.
Max Kravitz, a resident of Pennsylvania, died in July 1958. Thereafter, in 1959, Kravitz's will was admitted to probate in Pennsylvania, and Morris. Passon, Kravitz's brother-in-law, was appointed executor of the estate. Appellant, James Kravitz, was both Kravitz and Passon's nephew and a beneficiary under Kravitz's will.[1]
In 1963, Passon filed a First and Final Account for the estate valuing the net balance of the estate at $591,126.15. The Pennsylvania court entered an adjudication confirming the account and ordering Passon to distribute the residue of the Kravitz estate. Subsequently, in 1966 the court entered an Audit of First and Final Account. However, there was no order closing the estate and discharging Passon as personal representative, nor were all the assets of the estate distributed.
In October 2000, Passon died a resident of Florida. Marcus Levy and Frieda Passon were appointed co-personal representatives of the Passon estate. Levy contacted appellant in December 2000 and informed him that certain stocks in Passon's possession at the date of his death and an escrow account apparently belonged to the Max Kravitz estate. Levy then delivered the stocks and a share of the escrow account to appellant. This unexpected distribution led appellant to commence an investigation of the assets in the Max Kravitz estate, from which he alleged that he had received only $25,000 in the early 1960s.
*1276 As a result of his investigation, Kravitz filed suit against the Passon estate for negligence, conversion, tortious interference with an inheritance, and breach of fiduciary duty. The causes of action contained many of the same allegations, including that Passon misappropriated and converted assets, failed to render certain accountings, failed to include and properly report assets in the original account, failed to properly administer the estate and distribute the assets, and failed to keep the beneficiaries advised of the status of the estate.
The complaint alleges that Passon transferred estate property in 1967, 1972, and 1980, and failed to account for any proceeds resulting from those transfers. It also alleges that Passon failed to account for proceeds received from rental property income and failed to account for the satisfaction or other disposition of mortgages owned by the Kravitz estate. The complaint lists several account balances, alleging that Passon failed to account for the distribution of the assets and income. Additionally, the complaint lists numerous stocks and claims that Passon failed to account for dividends or distributions on the stocks since 1963.
During discovery, appellant testified that his father first advised him at age sixteen that he would be receiving an inheritance from his uncle's estate in 1958, the same year in which his uncle passed away. Through his father, appellant believed that the estate was worth approximately $600,000, and as one of three beneficiaries he would receive one-third of the estate. However, the only amount he ever recalled receiving was a check for $25,000 around 1963. While appellant admitted that Passon never did anything to prevent him from reviewing the court file pertaining to Max Kravitz, he also stated that Passon never offered any accounting and never consulted him in any way. Kravitz admitted that he expected to receive substantially more than $25,000.
The trial court granted the Passon estate's motion for summary judgment on all causes of action, finding that all were barred by the statute of limitations or statute of repose set forth in section 95.031(2)(a), Florida Statutes. The court found that all assets of the estate in possession of the personal representatives of the Passon estate had already been distributed to appellant. Appellant was due only interest on the amounts distributed, which the court calculated at $1250.
We affirm the summary judgment entered by the trial court as to all counts except for the breach of fiduciary duty. We reverse the summary judgment on that cause of action, because we conclude that material issues of fact exist as to whether Passon was ever discharged as the personal representative of the estate. Without a discharge, Passon remained the personal representative with all of the duties and obligations which that role demands. A claim may be brought against a personal representative in his individual capacity for breach of fiduciary duty to the estate even after discharge, involving assets wrongfully withheld or disposed and of which the beneficiary had no notice. See Gadsden v. Jones, 1 Fla. 332 (1847); Van Dusen v. Se. First Nat'l Bank of Miami, 478 So.2d 82 (Fla. 3d DCA 1985). It follows that prior to discharge the personal representative acts in his or her representative capacity and continues to manage the property of the estate for the benefit of the devisees. Thus, a cause of action for breach of fiduciary duty against the personal representative, individually, does not accrue until discharge.
Appellant alleges that the Max Kravitz estate was never closed and thus the court never discharged Passon as executor of the estate. The Passon estate disputes this. *1277 The documents in the record are not conclusive either way. This constitutes a material issue of fact. Further, the record reflects that Passon continued to deal with estate assets, signing various documents as executor of the estate. Up until the date of his death, Passon continued to collect dividends on stocks belonging to the estate which he never distributed to the estate beneficiaries but kept in escrow. We conclude that material issues of fact remain as to whether Passon was discharged as executor of the estate, from which date the statute of limitations could run. If so, the statute of limitations would not have begun to run until Passon's death. These issues are for a jury to resolve.
The Passon estate also alleges that appellant was on notice of the alleged breach of fiduciary duty as early as 1963 when he received only $25,000 from an estate from which he expected to receive around $200,000. However, whether he was put on sufficient notice to require him to conduct a more thorough investigation of the estate is also an issue of fact for the jury. He never received notice of the filing of the accounting for the estate, and Passon was his uncle, whom he trusted not only as a family member but also as the executor of his uncle's estate and the family lawyer. Laches may apply, but the issue is one of fact which is unresolved on this record.
We also note that proceedings in the Kravitz estate are now ongoing in Pennsylvania. Many of the issues which will be resolved in that case may determine the issues in this Florida proceeding. Although we have noted that material issues of fact remain for determination by a jury, we do not preclude that further action by the Pennsylvania court might resolve this issue. If Passon had in fact been discharged as executor and kept the estate assets for himself forty years ago, then this may be a garden variety tort of conversion or tortious interference with an inheritance for which the statute of limitations would have long since run.
Affirmed in part, reversed in part, and remanded for further proceedings.
KLEIN and HAZOURI, JJ., concur.
NOTES
[1] From the submissions in the record, this family had a complicated relationship. Max Kravitz's widow was convicted of second-degree murder in his death and thus was barred from her share of his estate and her position as co-personal representative of his estate.